IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01797-MSK-KLM
(Consolidated with Civil Actions No. 06-cv-1922-MSK-KLM and Civil Action No. 06-cv-02017-MSK-KLM)

LEON BRITTON, Derivatively on behalf of Delta Petroleum Corporation,

        Plaintiff,

v.

ROGER A. PARKER,
ALERON H. LARSON, JR.,
KEVIN K. NANKE,
JOHN R. WALLACE,
JERRIE F. ECKELBERGER,
JAMES B. WALLACE,
RUSSELL S. LEWIS,
JORDAN R. SMITH,
NEAL A. STANLEY,
KEVIN R. COLLINS,
JAMES P. VAN BLARCOM,
TERRY D. ENRIGHT, and
JOHN P. KELLER,

        Defendants,

and

DELTA PETROLEUM CORPORATION, a Delaware corporation,

        Nominal Defendant.

## ORDER ON MOTIONS

THIS MATTER comes before the Court on the following motions:

(1)    A motion to dismiss **(#39)** filed by Defendants Aleron Larson, Jr., Jerrie Eckelberger, James Wallace, Russell Lewis, Jordan Smith, Neal Stanley, Kevin Collins, James Van Blarcom, Terry Enright, and John Keller (hereinafter, "the

        Director Defendants"), to which the Plaintiff responded **(#46)**, and the Director Defendants replied **(#54)**.

(2)      A motion to dismiss **(#41)** filed by Delta Petroleum Corporation (hereinafter, "the company" or "the Nominal Defendant"), to which the Plaintiffs responded **(#48)**.

(3)      A motion to dismiss **(#43)** filed by Defendants Roger Parker, Kevin Nanke and John Wallace (hereinafter, "the Officer Defendants"), to which the Plaintiff responded **(#46).**

The Plaintiffs also filed a Supplemental Factual Statement in Opposition to Defendants' Motions to Dismiss **(#49)**, as well as supplemental authority **(#58)**. This lead to the filing of four additional motions:

(4)      The Nominal Defendant's motion for leave to respond to the supplemental authority, or to strike it **(#59)**.

(5)      The Director Defendants' motion for leave to respond to the supplemental authority **(#61)**.

(6)      The Nominal Defendant's motion for leave to submit supplemental authority **(#62)**, and submission of the same **(#63)**.

(7)      The Officer Defendants' motion for leave to submit supplemental authority **(#65)**, and submission of the same **(#66)**.

The Court grants these four motions to the extent the parties seek leave to submit supplemental authority, but strikes nothing. Having considered the remaining motions, the Court

      **FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Procedural Background

This is a shareholders' derivative action commenced by Plaintiffs and shareholder Leon Britton[1] on behalf of the Delta Petroleum Corporation, which is named as the Nominal Defendant. The remaining Defendants consist of the Nominal Defendants' Directors and Officers.

In their Amended Complaint **(#32)**, the Plaintiffs allege that on various dates between 1997 and 2006, the Director and Officer Defendants engaged in a secret scheme to grant themselves and certain others stock options and improperly backdated the grants to coincide with historically low closing prices for the company's stock. This had the effect, they allege, of giving these individuals stock options with strike prices lower than trading prices, allowing them to realize an instant monetary gain. They allege that several of the Defendants collectively realized more than $16.7 million based upon illegally backdated stock options. They also claim that the Defendants falsified financial statements and proxy statements during this period, "materially overstating the Company's net income and earnings per share and materially understating its net losses and losses per share." Based thereon, they assert the following claims:

  Claim 1: Violation of § 10(b) of the Securities Exchange Act
  Claim 2: Violation of § 14(a) of the Securities Exchange Act
  Claim 3: Violation of § 20(a) of the Securities Exchange Act
  Claim 4: Breach of Fiduciary Duties, and Aiding and Abetting Breach of Fiduciary Duties
  Claim 5: Corporate Waste
  Claim 6: Gross Mismanagement
  Claim 7: Unjust Enrichment
  Claim 9:[2] Insider Selling and Misappropriation of Information

---

[1] The Amended Complaint is entitled "Plaintiffs' Consolidated Verified Shareholders Derivative Complaint." However, pursuant to the order consolidating these actions, the caption references only a single Plaintiff who asserts claims on behalf of all shareholders.

[2] Claim 8 was an "Abuse of Control" claim. In his response to the motions to dismiss, the Plaintiffs concede that such claim is subsumed within Claim 4.

   Claim 10: Rescission
   Claim 11: Accounting

Claims 1 through 3 arise under federal law; the remaining claims arise under Colorado law.[3]

  The Director and Officer Defendants move to dismiss Claims 1 through 9 pursuant to Fed. R. Civ. P. 12(b)(6). The Nominal Defendant moves to dismiss all claims for failure to comply with Fed. R. Civ. P. 23.1. The Plaintiffs oppose all motions.

### III. Issues Presented

  The first issue presented is whether the Plaintiff has pled sufficient facts to support his claims under the Securities Exchange Act. If he has not, then the second issue presented is whether the Court should continue to exercise subject matter jurisdiction over the Plaintiff's supplemental state law claims.

### IV. Analysis

**A. Securities Exchange Act Claims**

  The Director and Officer Defendants move to dismiss the Plaintiffs' Securities Exchange Act Claims (Claims 1 through 3) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). There is a strong presumption against the dismissal of claims under this rule. *See Cottrell, Ltd. v. Biotrol Intern., Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). The Court accepts all well-pleaded allegations in a complaint as true and construes them in the light most favorable to the Plaintiffs. *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). For purposes of Rule 12(b)(6), a

---

[3] The Amended Complaint does not specify whether these claims arise under Colorado law, and the parties disagree as to this. The Plaintiffs contend that "there is authority supporting the application of Colorado law to all claims." The Defendants contend that claims based upon conduct occurring before January 31, 2006 are governed by Colorado law, and all other claims are governed by Delaware law. However, they do agree that Claims 4 through 11 are state law claims.

plaintiff is not required to include detailed factual allegations in a complaint, but a complaint must contain "more than labels and conclusions" and must consist of more than "a formulaic recitation of the cause of action[.]" *See Bell Atlantic Corp. v. Twombly*, _ U.S. _, 127 S. Ct. 1955, 1964-65 (2007). Rather, it must contain factual allegations which are "enough to raise a right to relief above the speculative level[.]" *Id.*

The standard for dismissal under Rule 12(b)(6) is modified by Fed. R. Civ. P. 9. When fraud is alleged, Rule 9(b) requires that the circumstances constituting fraud be stated with particularity. However, Rule 9(b) allows for a defendant's state of mind to be averred generally.

In a securities fraud action commenced by private shareholders, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78-u(b) provides an additional overlay to the Rule 12(b)(6) standard. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, _ U.S. _, 127 S. Ct. 2499 (2007).[4] Section 78-u(b) provides in pertinent part:

> (b) Requirements for securities fraud actions
> > (1) Misleading statements and omissions
> > In any private action arising under this chapter in which the plaintiff alleges that the defendant--
> > > (A) made an untrue statement of a material fact; or
> > > (B) omitted to state a material fact necessary in order to make the statements made, in the light of

---

[4] Congress enacted the PSLRA in recognition that private actions to enforce federal antifraud securities laws supplement criminal and civil enforcement actions commenced by the United States Department of Justice and Securities and Exchange Commission ("SEC"). *Id.* at 2504. However, because private individuals might commence an action which imposes substantial costs on companies or individuals who have complied with the law, Congress intended the PSLRA's heightened pleading requirements to serve "[a]s a check on abusive litigation by private parties[.]" *Id.*
    When a defendant moves to dismiss a private shareholders' derivative action for failure to meet the PSLRA's pleading requirements, Congress has also mandated that discovery be stayed "unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C.A. § 78u-4(b)(3)(B). In the case at bar, discovery has been stayed, and there has been no motion for particularized discovery.

5

> the circumstances in which they were made, not misleading;
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief,[5] the complaint shall state with particularity all facts on which that belief is formed.
>
> (2) Required state of mind
> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. . . .

Notwithstanding these heightened pleading requirements, however, when a motion to dismiss a § 10(b) claim is made under Rule 12(b)(6), a court still must accept all factual allegations in a complaint as true, and must consider the complaint in its entirety without scrutinizing the individual allegations in isolation. *Tellabs, Inc.*, 127 S. Ct. at 2509.

The Tenth Circuit has identified several factors which a court should consider when determining the sufficiency of allegations under the PSLRA: (1) the level of factual detail alleged; (2) the number of facts alleged; (3) the coherence and plausibility of the facts, when considered together; (4) whether the plaintiff has disclosed his or her source of knowledge; (5) whether such sources are reliable; and (6) other indicia which support the conclusion that the plaintiff contends should be drawn from the complaint's allegations. *See Adams v. Kinder-*

---

[5] All allegations in the Amended Complaint are based upon information and belief. Counsel's verification of the Amended Complaint expressly states: "I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true."

*Morgan, Inc.*, 340 F.3d 1083, 1099 (10th Cir. 2003).  If a plaintiff elects not to disclose the source of alleged facts in the complaint, then the remaining allegations "will usually have to be particularly detailed, numerous, plausible or objectively verifiable by the defendant[.]"  *Id.* at 1103.

The Director and Officer Defendants assert that the heightened pleading requirements of the PSLRA apply to all three claims under the Securities Exchange Act, and the Plaintiffs do not dispute this assertion.  Indeed, several courts have determined that the heightened pleading requirements of the PSLRA apply to a claim under § 14(a) of the Securities Exchange Act when the claim is grounded in alleged fraudulent conduct.  *See California Public Employees' Retirement System*, 394 F.3d 126, 160 (3d Cir. 2004); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005); *see also In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 305-06 (D. Del. 2002).  Therefore, the Court applies the PSLRA heightened pleading requirements to all three Securities Exchange Act claims, because all are premised upon the alleged fraudulent backdating of stock options.

    **1.**    **Claim 1: Alleged Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5**

To state a claim for fraud under § 10(b) of the Securities Exchange Act and Rule 10b-5(b), a plaintiff must allege that: (1) in connection with the purchase or sale of a security, (2) the defendant, with scienter, (3) made a false representation of a material fact (4) upon which the plaintiff justifiably relied to his or her detriment.  *See Joseph v. Wiles,* 223 F.3d 1155, 1161 (10th Cir. 2000); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996). When a claim is based upon nondisclosure, as opposed to a false representation, a plaintiff must

allege that the defendant knew of a material fact and that the failure to reveal such fact would likely mislead investors.  *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003).

Similarly, a claim for "scheme liability" may be stated pursuant to § 10(b) of the Securities Exchange Act and Rule 10b-5(a) or (c).  To state such a claim, a plaintiff must allege that: (1) the defendant, with scienter, (2) committed a manipulative or deceptive act (3) in furtherance of a scheme to defraud (4) upon which the plaintiff justifiably relied to his or her detriment.  *See In re Qwest Comm. Int'l, Inc. Securities Litig.*, 387 F. Supp. 2d 1130, 1143 (D. Colo. 2005) ("*Qwest*").

Scienter is an element common to either theory.  With regard to scienter, a plaintiff must particularly plead facts which show the defendant acted intentionally or recklessly to deceive, manipulate, or defraud.  *Tellabs, Inc.*, 127 S. Ct. at 2504, 2507 n.3; *see also City of Philadelphia v. Fleming Companies, Inc.,* 264 F.3d 1245, 1259-61 (10th Cir. 2001).[6]  A court must consider all competing inferences of scienter which can be drawn from the complaint's factual allegations, and determine whether the inference suggested by the plaintiff is cogent and "at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 2504-05.  To allege scienter, it is not enough for a plaintiff to allege only that a defendant was a senior executive in the company.  *Adams*, 340 F.3d at 1106.  Nor is it sufficient to simply allege that a defendant had both motive and opportunity.  *City of Philadelphia*, 264 F.3d at 1249.  However, a defendant's status as a senior executive, motive, and opportunity are factors a court should consider in looking at the totality of the pleadings.  *Id.* at 1249, 1262-63; *Adams,* 340 F.3d at 1106.

Reliance is also an element common to either theory.  If reliance is not alleged, there is a

---

[6] This is a divergence from the general averment pleading permitted by Rule 9(b).

8

rebuttable presumption of reliance when a defendant fails to disclose material information it was obligated to disclose, or when "fraud creates the market," meaning the defendant's fraud allowed for securities to exist in the market when they otherwise would have been unmarketable. *Joseph,* 223 F.3d at 1162-65.

The Director and Officer Defendants contend that the Plaintiffs' allegations are conclusory and insufficient to demonstrate any element of this claim. The Plaintiffs argue to the contrary. Therefore, the Court examines all allegations in the Amended Complaint, as a whole, to determine whether the Plaintiffs have alleged sufficient facts to support either theory of recovery.

The Plaintiffs allege that the Director and Officer Defendants engaged in a secret scheme to grant themselves backdated stock options, that they falsified information in the company's financial and proxy statements to conceal the backdated options, that they materially overstated the company's income, and that they materially understated the company's losses. (¶ 2).[7] They allege that several of the Defendants realized more than $16.7 million in illicit compensation by exercising illegally backdated stock options and selling the company's stock. (¶¶ 2, 166). They also allege that the Defendants engaged in backdating to re-price existing options and give them extended expiration dates. (¶¶ 66-68).

According to the Plaintiffs, the Defendants were able to profit because the option grants were made below fair market value (*i.e.,* the stock option's exercise price was below fair market value), but they represented to shareholders that all options grants were made at or above fair market value. (¶¶ 39, 41-42, 46). This resulted in no compensation being recognized, and no expense being recorded, when a stock option grant was made. (¶¶ 50, 64, 119, 130, 132, 134,

---

[7] All references to (¶ _) are to specific paragraphs in the Amended Complaint **(#32)**.

9

136, 138, 140, 142, 144, 146, 148, 150, 152, 154, 156, 158, 160, 162, 164).  Fair market value was defined as the closing sales price on the immediately preceding business day.  (¶ 47).

The Plaintiffs believe this scheme was occurring due to an article published in the Wall Street Journal during March 2006.  (¶ 3).  The article focused upon financial filings from "several companies," <u>excluding</u> the Nominal Defendant, and was an "extension" of academic articles which had suggested that the backdating of options was a widespread practice.  (¶ 3).

The Plaintiffs also believe this scheme was occurring because the Center for Financial Research & Analysis identified the Nominal Defendant during May 2006 as a company "with the highest risk of options backdating."  (¶ 4).  The Nominal Defendant was subsequently subpoenaed by the United States Attorney to obtain stock option records, and later became the subject of an SEC investigation.  (¶ 4).

The Plaintiffs also believe that this scheme was occurring because 9 out of 23 stock option grants to the Directors and Officers between 1996 and 2002 came at monthly lows in the company's share price, either "near or on the very day that [the company's] stock hit its low price for the month."  (¶¶ 5, 52, 185).  In one instance, the Plaintiffs allege that the stock options were re-priced not only to the year's low price, but also to the intra-day low price.  (¶ 68).  According to the Plaintiffs, the odds of there being so many option grants near the monthly low were "remote," therefore it is likely the options were backdated.  (¶¶ 5, 52, 62).  They further allege that some stock option grants occurred in advance of sharp stock price increases.  (¶¶ 52, 55-61).  The Plaintiffs identify 18 specific stock option grants to Defendants Roger Parker (the company's current Chairman and CEO), Aleron Larson (the company's former Chairman and CEO), and Kevin Nanke (the company's CFO) dated between November 14, 1996 and October 5, 2001,

10

which had strike prices at the monthly low, ranging between $1.66 and $5.50 per share. (¶¶ 6, 55-61, 184). The Plaintiffs allege that "the exercise price of almost every grant to defendants in the relevant period was below the weighted average price of the stock in the corresponding fiscal year." (¶ 53).

The Plaintiffs contend that the backdating of options artificially inflated the company's stock price to $24.95 per share. (¶ 12). They also allege that while the stock price was artificially inflated, Mr. Parker sold stock valued at $1.5 million; Mr. Larson sold stock valued at $14.2 million; Mr. Nanke sold stock valued at $93,958; Terry Enright (a Director) sold stock valued at $224,686; James Wallace (a Director) sold stock valued at $260,200; and Jerrie Eckelberger (a Director) sold stock valued at $372,437. (¶¶ 12-13, 186-87).

The Plaintiffs allege that the backdating of options was approved by members of the Compensation and Incentive Plan Committees of the Delta Board of Directors, which included Defendants James Wallace, Eckelberger and Enright. (¶¶ 13, 183). They also allege that each Director and Officer Defendant either granted, approved, received[8] and/or concealed backdated stock options, and personally benefitted from the same, either by selling stock or receiving director's fees and compensation. (¶¶ 21-33, 65, 180, 184). They further allege that several of the Defendants signed the company's financial reports and proxy statements, and assisted in preparation of the reports and proxy statements. (¶¶ 21-33). They contend that the proxy statements were false and misleading because they did not mention the backdating practices which had occurred, and represented that re-pricing of stock option grants had been at or above fair

---

[8] They only alleges that Mr. Parker, Mr. Larson, Mr. Eckelberger, Mr. Enright, John Wallace and James Wallace received or benefitted from sales of backdated stock options.

11

market value. (¶¶ 69-112). They further allege that each Defendant had access to confidential proprietary information concerning the company's business, finances, and stock option granting practices, and therefore either knew, or recklessly disregarded, that facts were being withheld from the company's shareholders. (¶ 38).

The Plaintiffs allege that the Board of Directors and the Compensation Committee had the power to select which employees would be given stock option grants, the amount of each award, and the exercise price. (¶¶ 45-46). In addition, the decision to grant stock options could either be made during a formal meeting, or by unanimous written consent of the Board or Committee members. (¶ 48). As to all of the stock option grants at issue in this case, they were approved in writing, rather than at a formal meeting. (¶ 49).

In short, the Plaintiffs conclude that the stock option grants were backdated due to the listed dates of each grant, the fact that the United States Attorney and SEC investigated the company, and the fact that the Center for Financial Research & Analysis identified the company as having "the highest risk" of backdating. These factual allegations, however, are insufficiently specific to support the Plaintiffs' conclusion that backdating of stock options occurred.

The Court first notes, however, that a few of the factual allegations favor the Plaintiffs' contention. The Defendants are either current or former Directors and Officers, who could easily have the financial motive to backdate their own stock options or be compensated for agreeing to backdate stock options for others. Several Defendants exercised stock options and personally gained from it. Some Defendants were in a position to decide which employees would be given stock options, and at what strike price.

However, if the reported date of a stock option grant, alone, were sufficient to maintain a

claim of securities fraud, then any stock option granted on a favorable date would immediately become suspect, and could become the subject of a lawsuit. This would hold true for all stock option grants, whether or not they were backdated, and thus would include permissible stock option grants. Through enactment of the heightened pleading requirements in the PSLRA, this is precisely what Congress intended to avoid.

The Plaintiffs have repeatedly alleged that the odds of there being so many option grants near the monthly low were "remote." However, they allege no facts to support this conclusion, nor do they explain why they believe this to be the case.

In addition, there are no allegations that the United States ever commenced a criminal action against the Defendants, nor that the SEC decided to commence a civil action against them. There also are no allegations as to what the Center for Financial Research & Analysis is, or how it determined that the company had a risk of backdating options, or why that risk was high in comparison to other publicly-traded companies. However, the Officer Defendants have submitted a copy of the Center for Financial Research & Analysis' report as an exhibit to their motion.[9] The Center looked at 100 companies and identified 17 which it believed were at risk of having backdated options based upon the number of option grants at exercise prices and dates which either matched or were close to a 40-day low in the company's stock price. However, the report states, in pertinent part, that its purpose is to identify "companies which *could* be at risk for having backdated options," but the Center is "not able to conclusively state whether or not backdating occurred." It also states that other, non-public information would likely be needed to

---

[9] Pursuant to *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997), this does not convert the motion into one for summary judgment, because the Center's report is referred to in the Amended Complaint and central to the Plaintiffs' claim.

confirm whether backdating occurred.

There are no allegations of any meetings or conversations between any of the Defendants and anyone else which gave rise to the Plaintiffs' suspicion that the stock options were backdated. There are also no allegations of any memoranda, e-mails, or other written documentation to suggest that the stock options were backdated. There are also no allegations as to any statements made by any Defendant which could suggest that such Defendant participated in a backdating scheme. Although the Plaintiffs allege that backdating occurred, they do not allege when it occurred and simply identify the stock option grants which they believe were backdated. There are also no allegations as to how the stock option grants complained of in this case compared with other stock option grants to the Defendants or anyone else. Nor are there allegations to suggest that the "spike" in stock prices, which allegedly occurred after several stock option grant dates, were out of the ordinary for the company's stock.

The allegations are simply insufficient to suggest that the stock options were backdated. Indeed, the Plaintiffs allege that stock option grants to Directors and Officers were permissible as long as the strike price was at or above fair market value. It was also permissible for stock options to be granted in writing, without a formal meeting.

The Court therefore concludes that the Plaintiffs have not alleged sufficient facts to support Claim 1. However, the Plaintiffs ask in their response that if the Court deems their allegations to be insufficient, they be given leave to amend. The Plaintiffs have identified no additional facts which they would plead in support of their claims, if given the opportunity to file a Second Amended Complaint. However, the Court will stay dismissal of Claim 1 for a period of 10 days to allow the Plaintiffs an opportunity to plead sufficient facts in support of this claim. If

the Plaintiffs should choose to avail themselves of this opportunity, they must file a motion to amend along with the proposed Second Amended Complaint, both of which detail the new factual allegations.

### 2. Claim 2: Alleged Violation of § 14(a) of the Securities Exchange Act

This claim alleges the violation of § 14(a) of the Securities Exchange Act, 15 U.S.C. § 782(a), which provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

The parties agree that a § 14(a) claim has three elements: "(1) that the proxy contained a material misrepresentation or omission; (2) that the defendant was at least negligent, and (3) that the proxy was the essential link in completing the transaction in question." *Lone Star Steakhouse & Saloon, Inc. v. Adams,* 148 F. Supp. 2d 1141, 1151 (D. Kan. 2001); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970). The Director and Officer Defendants contend that the allegations are insufficient to support the first and third elements of such claim. The Plaintiffs contend otherwise.

The Court focuses upon element 1 – whether the Plaintiffs have pled sufficient facts to demonstrate that the proxy contained a material misrepresentation or omission. The Plaintiffs contend that the proxies contained false and misleading statements because they represented that stock option grants had been at or above fair market value, and failed to disclose that some stock option grants had been below market.

15

For the same reasons that the allegations in the Amended Complaint are too conclusory and inspecific to support Claim 1, the allegations are too conclusory and inspecific to support element 1 of Claim 2. For the statements in the proxies to be false, or for there to be an omission, there must have been backdating of the stock option grants. The Plaintiffs' allegations as to the occurrence of backdating are simply insufficient for purposes of the PSLRA. Therefore, the Court is also compelled to dismiss Claim 2. However, as with Claim 1, the Court will stay dismissal of this claim for a period of 10 days and allow the Plaintiffs to file a motion to amend the Amended Complaint.

### 3. Claim 3: Alleged Violation of § 20(a) of the Securities Exchange Act

Claim 3 alleges a violation of § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), which provides:

> (a) Joint and several liability; good faith defense
> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

A claim under this statute has two elements: (1) a primary violation of the securities laws; and (2) control over the primary violator by the defendant. *See Qwest*, 387 F. Supp. 2d at 1148 (citing and quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)); *see also Adams,* 340 F.3d at 1107. The claim has no state of mind requirement. *Adams*, 340 F.3d at 1109. Thus, to state a claim under this statute, a plaintiff must first plead a predicate violation of the securities laws. *See id.* at 1108. The plaintiff then must allege specific facts from which it can

reasonably be inferred that the defendant had control over the primary violator. *Qwest*, 387 F. Supp. 2d at 1148-49.

Here, the Plaintiffs have pled insufficient facts to support a primary violation of the Securities Exchange Act. Therefore, they have not pled sufficient facts to support element 1 of a § 20(a) claim. The Court dismisses Claim 3, but, again, stays such dismissal for 10 days to allow the Plaintiffs to file a motion to further amend the Amended Complaint.

**B.  State Law Claims**

All of the remaining claims are asserted pursuant to state law. The sole basis for the Court's jurisdiction is 28 U.S.C. § 1367; the Plaintiffs do not allege that the Court has jurisdiction over the state law claims pursuant to any other statute, such as 28 U.S.C. § 1332. Under 28 U.S.C. § 1367(c)(3), this Court "may decline to exercise supplemental jurisdiction over a claim . . . . [if it] has dismissed all claims over which it has original jurisdiction[.]" All claims over which the Court has original jurisdiction lack sufficient factual allegations and therefore require dismissal. Unless there is an amendment to the Amended Complaint to cure such defects, the Court declines to exercise supplemental jurisdiction over the state law claims.

**IT IS THEREFORE ORDERED** that:

(1) The Nominal Defendant's motion for leave to respond to the supplemental authority, or to strike it **(#59)**, is **GRANTED** in part and **DENIED** in part. Leave to respond is granted.

(2) The Director Defendants' motion for leave to respond to the Plaintiffs' supplemental authority **(#61)**, the Nominal Defendant's motion for leave to submit supplemental authority **(#62)**, and the Officer Defendants' motion for leave to submit supplemental authority

**(#65)** are **GRANTED.**

(3)     The motions to dismiss **(#39, #43)** filed by the Director and Officer Defendants are **GRANTED**. The Court dismisses the Securities Exchange Act claims (Claims 1 through 3) pursuant to Fed. R. Civ. P. 12(b)(6) and the PSLRA, and declines to exercise jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the Court also dismisses Claims 4 through 11. However, this Order of dismissal is **STAYED** for a period of ten (10) days, to allow Plaintiffs an opportunity to file a motion for leave to file a Second Amended Complaint. Should the Plaintiffs elect to file such a motion, this Order of dismissal will continue to be stayed until the Court rules on such motion.

(4)     The Nominal Defendant's motion to dismiss **(#41)** is **DENIED**, as moot, and without prejudice.

Dated this 26th day of September, 2007

**BY THE COURT:**

*Marcia S. Krieger*
———————————————
Marcia S. Krieger
United States District Judge