IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01797-MSK-KLM
    (Consolidated with Civil Action No. 06-cv-01922 and Civil Action No. 06-cv-02017)

LEON BRITTON, Derivatively on behalf of DELTA PETROLEUM CORPORATION,

    Plaintiff(s),

v.

ROGER A. PARKER.
ALERON H. LARSON, JR.,
KEVIN K. NANKE,
JOHN R. WALLACE,
JERRIE F. ECKELBERGER,
JAMES B. WALLACE,
RUSSELL S. LEWIS,
JORDAN R. SMITH,
NEAL A. STANLEY,
KEVIN R. COLLINS,
JAMES P. VAN BLARCOM,
TERRY D. ENRIGHT, and
JOHN P. KELLER,

    Defendant(s).
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

        This matter is before the Court on Plaintiff's Motion for Leave to Amend Complaint

[Docket No. 78; Filed October 29, 2007] (the "Motion").   Pursuant to 28 U.S.C. §

636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court

for recommendation.   Defendants filed various responses to the Motion.   Defendants

Aleron H. Larson, Jr., Jerrie F. Eckelberger, James B. Wallace, Russell S. Lewis, Jordan

R. Smith, Neal A. Stanley, Kevin R. Collins, James P. Van Blarcom, Terry D. Enright and

John P. Keller's (the "Director Defendants") response is Docket No. 81, filed on November 19, 2007. Defendants Roger Parker, Kevin Nanke and John R. Wallace's (the "Officer Defendants") response is Docket No. 82, filed November 19, 2007. Nominal Defendant Delta Petroleum Corporation's (the "Company") response is Docket No. 84, filed November 19, 2007. Plaintiff filed a consolidated reply to Defendants' responses [Docket No. 91; filed December 3, 2007]. Plaintiff subsequently filed a brief asserting supplemental authority in support of the Motion [Docket No. 92; Filed April 10, 2008]. The Company and the Officer Defendants responded to Plaintiff's supplemental authority [Docket Nos. 97 &101; Filed April 22, 2008]. The Court has reviewed the Motion, Responses, Reply, supplemental authority, responses to the supplemental authority, the entire case file and applicable case law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED in part and DENIED in part.**

## I. Procedural Background

Plaintiff filed his original Verified Shareholder Derivative Complaint in Civil Action No. 06-cv-01797 on September 11, 2006 [Docket No. 1]. The parties to the original case, along with the plaintiffs in two related actions, moved to consolidate their separately filed cases in October of 2006 [Docket No. 11]. The Court granted the Motion to Consolidate on October 30, 2006 [Docket No. 25].

On November 29, 2006, Plaintiff filed his Consolidated Verified Shareholders Derivative Complaint (the "First Consolidated Complaint") [Docket No. 32]. Each group of Defendants filed a Motion to Dismiss the First Consolidated Complaint [Docket Nos. 39, 41 & 43]. On September 26, 2007, the District Court Judge granted the Director and Officer

Defendants' Motions to Dismiss the First Consolidated Complaint. The Court stayed the Order of Dismissal in order to permit Plaintiff to file a motion for leave to file an amended consolidated complaint [Docket No. 71]. Plaintiff did so on October 29, 2007 [Docket No. 78].

The First Amended Consolidated Verified Shareholder Derivative Complaint ("First Amended Complaint") is currently before the Court [Docket No. 78-2]. It asserts six claims for relief against Defendants based on multiple alleged illegal stock options backdating events. Plaintiff asserts claims for breach of fiduciary duty and/or aiding and abetting breach of fiduciary duty, unjust enrichment, "corporate waste," "gross mismanagement," accounting and violations of § 14(a) of the Securities Exchange Act.

The District Court Judge granted the Defendants' Motions to Dismiss the First Consolidated Complaint pursuant to Fed. R. Civ. P. 12(b)(6). As explained in the Order granting the Motions to Dismiss,

> the Plaintiffs allege that on various dates between 1997 and 2006, the Director and Officer Defendants engaged in a secret scheme to grant themselves and certain others stock options and improperly backdated the grants to coincide with historically low closing prices for the company's stock. This had the effect, they allege, of giving these individuals stock options with strike prices lower than trading prices, allowing them to realize an instant monetary gain.

*Order* [#71] at 3. In granting the Motions to Dismiss, the Court held that "the allegations are simply insufficient to suggest that the stock options were backdated." *Id.* at 14. As a result, the Court concluded that Plaintiff had failed to allege sufficient facts to support his original federal claims, which were brought pursuant to § 10(b) of the Securities Exchange Act and Rule 10b-5, § 14(a) of the Securities Exchange Act and § 20(a) of the Securities Exchange Act. *Id.* at 14, 16-17. In addition, the Court declined to exercise supplemental

jurisdiction over Plaintiff's original state law claims. *Id.* at 17. In support of their

Motion, Plaintiff asserts that the proposed First Amended Complaint streamlines their legal

claims and cures the factual defects in the First Consolidated Complaint which were

apparent to the District Court. Plaintiff points out that he has reduced the number of legal

claims and expanded the factual allegations in his amended pleading. The proposed First

Amended Complaint alleges a single federal law violation pursuant to § 14(a) of the

Securities Exchange Act, 15 U.S.C. § 78n and includes two new categories of factual

allegations: first, a detailed statistical analysis using litigation-tested methodology to support

the inference that the stock options at issue were backdated; and second, allegations

designed to show that demand on the Board of Directors to correct the alleged illegal

backdating would have been futile. *Motion* [# 78] at 3-8.

In their Responses to Plaintiff's Motion, Defendants have asserted two general

arguments against allowing amendment of the complaint. Both arguments are based on

well-established precedent that modifies Fed. R. Civ. P. 15(a)'s mandate for liberal

amendment of pleadings when the party who seeks to amend has repeatedly failed to cure

deficiencies in the complaint or when amendment would be futile. *Foman v. Davis*, 371

U.S. 178, 182 (1962). First, Defendants assert that Plaintiff has not corrected the factual

insufficiencies in the First Consolidated Complaint, and therefore amendment should be

disallowed. Second, Defendants assert three reasons why allowing Plaintiff to amend his

complaint would be futile and should therefore be denied. Defendants' futility argument is

based on the following contentions: (1) that the named Plaintiff lacks standing to pursue

this derivative action because he was not a shareholder at the time of the conduct alleged

to violate § 14(a) of the Securities Act and to support various state law claims; (2) that

4

Plaintiff's § 14(a) claim is barred by the statutes of limitations and repose; and (3) that Plaintiff has failed to show that an attempt to exercise demand on the corporation's Board of Directors would be futile. The Court addresses each of Defendants' arguments in turn.

## II. Analysis

### A. Standard for Amendment Pursuant to Fed. R. Civ. P. 15

The Court should grant leave to amend a complaint "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given, however, when amendment would be futile. *See Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason[,] such as . . . futility of amendment . . . [,] the leave sought should, as the rules require, be 'freely given.'"); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) ("[T]he district court may deny leave to amend where amendment would be futile." (citations omitted)). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Lind*, 466 F.3d at 1199 (citations omitted). The Tenth Circuit Court of Appeals has justified denial of leave to amend based upon failure to establish that a complaint could be amended to correct lack of standing. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Additionally, the Court has held that it would be futile to allow a party to amend its complaint when the claims in the amended complaint would be barred by the statute of limitations. *See, e.g.*, *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). Accordingly, pursuant to this well-established precedent, this Court must determine whether the First Amended Complaint "would be subject to dismissal" in deciding whether to grant leave to amend.

### B. Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Determining the sufficiency of the proposed First Amended Complaint's allegations in light of the Defendants' arguments regarding failure to state a claim and futility is, for all practical purposes, equivalent to ruling on a motion to dismiss the proposed First Amended Complaint. Because the essence of the inquiry is whether the amended complaint could withstand such a motion, the rules pertaining to Rule 12(b)(6) motions are applicable in these circumstances. *See, e.g.*, *Hinsdale v. City of Liberal, Kan.*, No. 96-1249-MLB, 1998 WL 928444, at *1 (D. Kan. Nov. 30, 1998) (unpublished decision). In other words, at this stage of the litigation, Plaintiff is afforded certain presumptions of truth. I must accept all of the well-pled fact allegations as true and draw all reasonable inferences in favor of Plaintiff. *Rocky Mtn. Parking, LLC v. BFI Waste Sys., Inc.*, No. 07-cv-01920-MSK-KMT, 2008 WL 1840729, at *2 (D. Colo. Apr. 23, 2008) (unpublished decision); *Spicer v. New Image Int'l, Inc.*, No. 04-2184-KHV-DJW, 2006 WL 3791972, at *3 (D. Kan. Dec. 26, 2006) (unpublished decision). Dismissal of a shareholder derivative lawsuit is inappropriate unless Plaintiff "would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

## C. Defendants' Arguments that the Proposed First Amended Complaint Is Subject to Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

As indicated *supra*, the District Court held that in the First Consolidated Complaint, Plaintiff failed to allege facts sufficient to demonstrate that the stock options at issue were backdated. The individual Defendants challenge the sufficiency of Plaintiff's amended allegations on several bases. The Director Defendants assert that Plaintiff has not "improve[d] upon the factual averments that the [District] Court found to be lacking in the

[original] Complaint." They also argue that no court has endorsed the Merrill Lynch methodology incorporated in the proposed First Amended Complaint as a means to support a conclusion that backdating has occurred, and further assert that the proposed complaint "omits the facts detailing the basis and method of calculating the figures underlying plaintiff's alleged statistical analysis." *Response* [#81] at 6-9. The Officer Defendants assert that Plaintiff has failed to allege that the 2004 and 2005 proxy statements were false and misleading, failed to allege that statements in the other proxy statements were false and misleading, and failed to allege that each proxy statement was an essential link in completing the backdating of options. *Response* [#82] at 8 -10.

### 1.    Sufficiency of Backdating Allegations

Plaintiff asserts that he has corrected the deficiency in backdating allegations by conducting an analysis of the stock options using "analytical methodology employed by Merrill Lynch that was published May 22, 2006, in Merrill Lynch's study entitled 'Options Pricing – Hindsight is 20/20.'" *First Amended Complaint* [#78-2] ¶ 37. According to Plaintiff, application of the Merrill Lynch methodology "supports an inference that numerous [stock option] grants were backdated and/or retroactively priced." *Id.* ¶ 40. In 36 separate paragraphs of the proposed First Amended Complaint, Plaintiff alleges the following general facts: the dates and number of discretionary stock option grants to certain individual Defendants, the exercise prices of such grants, the timing of such grants in terms of contemporaneous market prices for the Company's stock, the annualized percentage return on the grants to Defendants compared to the annual return to public investors in the Company's stock during the applicable time periods, the dollar value of the grants to certain Defendants based on public stock prices and the grants' exercise prices at the relevant

times, the timing of public disclosures of the grants compared to the purported grant dates, and the dates and prices of repriced stock option grants to certain Defendants. *Id.* ¶¶ 45 - 81.

As to the Director Defendants' argument, it is indisputable that the proposed First Amended Complaint does not include allegations regarding meetings, conversations, statements made by Defendants, internal memoranda, emails, or written documentation to support Plaintiff's allegation that backdating of stock options occurred. However, I do not find that such allegations alone would cure the factual deficiency identified by the District Court. Moreover, because the "scheme" alleged by Plaintiff was supposedly carried out in secret, Plaintiff is unlikely to have such information at his disposal prior to conducting discovery in the case.

First, case precedent does not require that a complaint contain such allegations in order to state a claim pursuant to § 14(a) of the Securities Exchange Act and the common law theories asserted here. *Edmonds v. Getty*, 524 F. Supp. 2d 1267, 1274 (W.D. Wa. 2007); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1015-16 (N.D. Cal. 2007). Second, in order to correct the factual deficiencies identified by the District Court, Plaintiff must simply make allegations that are sufficient to suggest that backdating occurred. They have done so in paragraphs 45 through 81 of the proposed First Amended Complaint, both by virtue of the factual allegations outlined *supra* and as a result of the reasonable inferences therefrom. In a nutshell, those paragraphs outline multiple awards of stock option grants to important corporate insiders on dates when market prices were relatively low – repeated combinations of timing and prices that could have enabled those individuals to realize significant financial gain, especially when compared to "ordinary shareholders."

Importantly, one of the inferences *favorable to Plaintiff* from the combinations of timing and exercise prices asserted in the proposed First Amended Complaint is that the options were backdated so as to permit maximum gain by the grantees. An inference *favorable to Defendants* from those allegations is that the timing of the grants is merely coincidental and nothing inappropriate occurred. But dueling inferences are not to be resolved on the equivalent of a motion to dismiss. *W. Palm Beach Firefighters Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 WL 879023, at *12 (D. Colo. Mar. 28, 2008) (unpublished decision). When the allegations are taken as true and reasonable inferences from those allegations are drawn in favor of Plaintiff, the proposed First Amended Complaint suggests that backdating occurred.

## 2. Court Approval of Merrill-Lynch Methodology

The Director Defendants' argument that the Merrill Lynch methodology has not been approved by any Court lacks merit. The Delaware Chancery Court has directly addressed arguments, made on a motion to dismiss, that the Merrill-Lynch report does not conclusively state that options were backdated and that use of the Merrill-Lynch methodology merely creates "statistical abstractions." In finding those arguments unpersuasive, the Court held: "[The Merrill-Lynch methodology] emphatically suggests that either defendant directors knowingly manipulated the dates on which options were granted, or their timing was extraordinarily lucky. Given the choice between improbable good fortune and knowing manipulation of option grants, the Court may reasonably infer the latter, even when applying [heightened pleading standards]." *Ryan v. Gifford*, 918 A.2d 341, 355 n. 34 (Del. Ch. 2007); *see also Edmonds*, 524 F. Supp. 2d at 1274 (adopting reasoning in *Ryan* and explicitly condoning use of Merrill-Lynch methodology in denying

9

motion to dismiss, pointing out "at the pleading stage, the plaintiff need not prove that backdating occurred but rather must only allege circumstances from which it may reasonably be inferred that backdating as opposed to an innocent bookkeeping error occurred"); *In re Affymetrix Derivative Litig.*, No. C 06-05353 JW, slip op. at 11 (N.D. Cal. Mar. 31, 2008) (citing *Ryan* and holding "[t]he Delaware Court of Chancery has approved of the use of a statistical methodology to support an allegation that stock options have been backdated") (unpublished decision); *In re Computer Scis. Corp. Derivative Litig*, No. CV06-05288-MRP (Ex.), 2007 WL 1321715, at *14 (C.D. Cal. Mar. 26, 2007) (unpublished decision) (referring to the Merrill-Lynch methodology, as employed in *Ryan*, as a "compelling statistical analysis showing abnormal, above-average market returns for the options grants"); *Conrad v. Blank,* 940 A.2d 28, 39 (Del. Ch. 2007) (denying motion to dismiss, in part, due to plaintiff's use of "[Merrill-Lynch] statistical analysis to bolster the inference that grants were deliberately backdated to more favorable dates").

### 3.    Other Alleged Factual Inadequacies

As indicated above, the Officer Defendants assert that Plaintiff has failed to allege that the 2004 and 2005 proxy statements were false and misleading, failed to allege that statements in other annual proxy statements at issue were false and misleading, and failed to allege that each proxy statement was an essential link in completing the backdating of stock options. *Response* [#82] at 8-10. Plaintiff counters that the proposed First Amended Complaint asserts that the 2004-2005 proxy statements "continued to make false statements about the purpose and nature of the stock option granting at Delta . . . ." *Reply* [#91] at 7 n.2.

Indeed, paragraph 36 of the proposed First Amended Complaint asserts that

"backdating is the most rational explanation" for "discretionary stock option grants to executives between 1996 and 2005." *First Amended Complaint* [#78-2] at 14-15. Paragraph 126(b) of the proposed First Amended Complaint states that "the 2004 Proxy Statement also communicated that stock option grants were not being backdated." *Id.* at 58. Manifestly, Plaintiff contends that this statement was false. The proposed First Amended Complaint's allegations about the content of the 2005 proxy statement reflect Plaintiff's over-arching contention that backdating occurred and was not reported to the public, and that the proxy statement was essential to the Board's proposals that shareholders vote for certain directors "who were backdating and/or receiving backdated stock options and making misrepresentations to Delta's shareholders." *Id.* at 61-62. Most significantly, the proposed First Amended Complaint includes general allegations about the falsity of each proxy statement at issue.

> For example, the proxy statements filed from 2000 through 2002 falsely represented in the executive compensation section that options had been granted to Delta's top executives with exercise prices equal to the market price of Delta common stock on the date of grant when, in fact, they were not.

> In addition, the Company . . . repeatedly communicated to Delta shareholders [in proxy statements] (i) that the Compensation Committee, in conjunction with the Board of Directors, was determining executive stock option grants pursuant to its authorization by the shareholders through Delta's stock option plans, and (ii) that stock options were being granted prudently and consistent with the Company's executive compensation policies to compensate management through future growth in the Company's market value . . ., so that the option holders would benefit only when, and to the extent, Delta's stock price increased after the grant.

> But these statements were materially false and misleading.

*Id.* at 39-40.

Contrary to the Officer Defendants' contention that the proposed First Amended

11

Complaint fails to allege that each proxy statement was an essential link in completing the backdating scheme, the following allegations are made: (1) that the Defendants caused the company to issue false proxy statements, *id.* ¶ 82; (2) that the proxy statements falsely communicated to shareholders that stock options were not being backdated, *id.* ¶¶ 83-84; (3) that the Defendants should have known that the proxy statements were false and misleading, *id.* ¶ 86; (4) that the false representations in proxy statements "were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme" because they supported proposals made by the Board to shareholders soliciting votes for directors who were benefitting from the backdating and to approve incentive plans that included backdated stock options, *id.* at ¶ 196; and (5) that the company was damaged by the false statements and backdating scheme, *id.* ¶ 197.

> The backdating also enabled Defendants to disguise the fact that the Company was paying higher compensation to executives by awarding them in-the-money options and to avoid having to expense the in-the-money portion as compensation expense and thus avoid reductions in the Company's net income. Keeping the scheme secret also hid the injury to the Company which occurred when executives and employees exercised the options and made capital contributions to Delta that were less than they should have paid, had the options not been granted in-the-money.

> The scheme likewise conferred great personal financial benefits on Defendants.

*Id.* at 31.

The allegations of the proposed First Amended Complaint regarding the falsity of relevant proxy statements and the link between those statements and the alleged backdating scheme are sufficient to state a claim upon which relief may be granted for violation of Section 14(a) of the Securities Exchange Act. *In re Zoran*, 511 F.Supp.2d at 1015 -1016 (noting that the inferences form the "bolierplate" facts pled in the complaint

sufficiently demonstrated that defendants neglected their duties to ensure that the options were granted at fair market value); *see also TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 444 (1976) (holding that derivative plaintiffs need only plead a material misstatement or omission and the causal relationship between the violation and an injury); *In re Affymetrix*, No. C 06-05353 JW, at 11 (noting that allegations that company directors granted themselves stock options with exercise prices below market value and citing to statistical analysis of stock options over a period of time sufficiently alleged backdating for purposes of surviving a motion to dismiss). The Officer Defendants' assertion that the Plaintiff has failed to state a claim under § 14(a) in the proposed First Amended Complaint is without merit.

**D. Defendants' Arguments that Leave to Amend Should Be Denied Because Amendment Would Be Futile**

**1. Lack of Standing**

In order for a plaintiff to maintain a derivative action on behalf of a corporation, it must be alleged that he was a shareholder at the time of the complained-of transaction. *See* Fed. R. Civ. P. 23.1(b)(1); *Eastern Oklahoma Television Co. v. Ameco, Inc.*, 437 F.2d 138, 141 (10th Cir.1971).[1]

Leon Britton, the named Plaintiff here, acknowledges that he was not a shareholder at the time of all the transactions at issue. *Reply* [#91] at 1–2. Nevertheless, he seems to argue that the "continuing wrongs" exception should apply, and the strict contemporaneous

---

[1] Delaware has a substantially similar requirement, as does Colorado. *See* Del. R. Ch. Ct. 23.1 ("[T]he complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains . . . ."); Colo. R. Civ. P. 23.1 ("[T]he complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains . . . .").

ownership requirement of Fed. R. Civ. P. 23.1 should be eased. *Id.*

The continuing wrong theory is a very narrow exception to the contemporaneous ownership requirement imposed by Rule 23.1. Plaintiff primarily relies upon *Conrad v. Blank*, 940 A.2d 28 (Del. Ch. 2007), to support his theory. *Reply* [#No. 91] at 1–2. *Conrad*, however, does not reach the conclusion advocated by Plaintiff. The plaintiff in *Conrad* alleged a "decade-long scheme between 1994 and 2003 of backdating stock option grants to benefit a group of current and former senior executives and directors . . . ." *Conrad*, 940 A.2d at 31. The court there noted that other Delaware courts had "refused to extend the 'continuing wrong' exception to the contemporaneous ownership rule in nearly identical situations" and "[would] not allow the plaintiff to seek relief with respect to option grants made prior to" her acquisition of the corporation's stock. *Id.* at 32; *see also Herald Co. v. Seawell*, 472 F.2d 1081, 1098 (10th Cir. 1972) ("[F]ederal courts generally have rejected the contention that the entire series of events constitutes a single transaction—the so-called continuous wrong notion—entitling a plaintiff to bring suit for injury suffered by the corporation subsequent to plaintiff's acquisition of stock." (internal footnote omitted)).

Because courts strictly enforce the contemporaneous ownership requirement and have rejected Plaintiff's theory in situations nearly identical to the one presented here, the continuing wrong theory should not apply in this case. Next, in accordance with determining whether Plaintiff was a shareholder at the time of the complained of transactions, it is important to determine the correct dates of the transactions at issue. The Court addresses that issue in the context of his federal and state law claims.

### i.    Federal Law Claim

Determining the appropriate date for analyzing Plaintiff's §14(a) and Rule 14a-9

claim is somewhat challenging. The most intuitive answer is the date on which the proxy statements were issued. Only two proxy statements were issued during the time in which Plaintiff held stock in the corporation. Those dates were November 22, 2004 and December 30, 2005. *First Amended Complaint* [#78-2] ¶¶ 125, 128. Therefore, if the issuance of the proxy statements is the conduct at issue, Plaintiff has standing to assert his federal claim only for the November 22, 2004 and December 30, 2005 proxy statements.

However, the dates of the actual issuance of the proxy statements are not necessarily the appropriate dates to consider. In *In re Exxon Mobile Corp. Securities Litigation*, the plaintiffs asserted violations of § 14(a) of the Securities Exchange Act ("SEA"), SEC Rule 14a-9, § 10(b) of the SEA, SEC Rule 10b-5, and § 20(a) of the SEA. *In re Exxon Mobile Corp. Sec. Litig.*, 500 F.3d 189, 193 (3d. Cir. 2007). The district court dismissed the § 14(a) and § 10(b) claims based on the statute of limitations and repose. *Id.* The court addressed when the applicable period of repose began. *Id.* at 200. The court noted, "while it is true that for a § 10(b) claim to 'accrue' there must be an exchange of securities . . ., the specific acts targeted by a § 10(b) cause of action are fraudulent statements themselves." *Id.* (citations omitted). The court held that "[i]t therefore is more consonant with the traditional understanding of how a statute of repose functions for the repose periods . . . to begin from the date of Exxon's alleged misrepresentation: the March 26, 1999, proxy statement." *Id.* It is appropriate to analogize to statute of limitations case law when determining accrual dates for purposes of standing issues. *See, e.g.*, *Desimone v. Barrows*, 924 A.2d 908, 925 & n.39 (Del. Ch. 2007). The question, therefore, is whether the appropriate date is determined by when the proxy statements were issued or when the options were allegedly backdated. If the Court determines that the accrual date is when

the options were allegedly backdated, then all of Plaintiff's claims would be barred for lack of standing. The last date of alleged options backdating was December 8, 2003, and Plaintiff did not acquire stock until January 26, 2004. *First Amended Complaint* [#78-2] ¶¶ 11, 33.

Here, however, I find that it is more appropriate to determine standing based on the dates on which the proxy statements were issued. Unlike 10b-5 violations, Rule 14a-9 violations do not have a scienter requirement. *See Exxon Mobile*, 500 F.3d at 196. Although there is some language from other circuits suggesting that some level of culpable intent is required in proving a § 14(a) claim, the degree of such culpability remains unclear. *See Seinfeld v. Bartz*, 322 F.3d 693, 697 (9th Cir. 2003) ("In addition, a Section 14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability . . . ." (internal citation omitted)). The language of SEC Rule 14a-9 more readily lends itself to the *Exxon Mobile* court's reading—that is, there is no scienter requirement under § 14(a). *See* 17 C.F.R. § 240.14a-9(a) ("No solicitation subject to this regulation shall be made by means of any proxy statement . . . *containing any statement* which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact . . . ." (emphasis added)). The issue is not whether Defendants intended the proxy statement to be false, but whether the proxy statement *contained* any false information. *Id.* Because no scienter is required for proof of a § 14(a) violation, the focus in is not necessarily on the particular conduct of Defendants, but rather on the proxy statement itself—specifically, whether or not it *contains* any false or misleading statements. Therefore, it is more appropriate that standing be determined based on the dates on which the proxy statements were issued, and not when

16

the options were allegedly backdated.

Therefore, a review of the First Amended Complaint reveals that Plaintiff has standing to assert violations of § 14(a) and Rule 14a-9 only for the two proxy statements issued after he became a shareholder—the November 22, 2004 and December 30, 2005 proxies.

### ii.        State Law Claims

For all claims except Count VI (Violation of § 14(a) of the Securities Exchange Act), the Court applies state law to determine the relevant date for purposes of determining standing. Because Delta Petroleum Corporation was incorporated in Delaware, that state's law applies. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991). In Delaware, the relevant inquiry is when the wrongful act occurred. *See, e.g.*, *Krahmer v. Christie's Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006) ("A statute of limitations is calculated from the time of the wrongful act . . . ."). Therefore, unlike the federal law claim, it appears that the relevant date for the state law claims should be the date of the alleged backdating of stock options.

Here, the latest date of alleged options backdating was December 8, 2003. *First Amended Complaint* [#78-2] ¶ 33. Therefore, as to this Plaintiff, who did not acquire stock in the Company until January 26, 2004, all state law claims based on the alleged backdating of stock options would be barred for lack of standing. *See Desimone*, 924 A.2d at 913 ("[A] derivative plaintiff must have owned stock at the time the transaction he attacks occurred in order to have standing to challenge that transaction on the corporation's behalf.").

### iii.        "Intervention" by New Plaintiff

Plaintiff argues that, even if he does not have standing to pursue some or all of the claims brought in this derivative action, he should be permitted to "intervene a plaintiff with a longer holding period" in order to satisfy the contemporaneous ownership requirement of Rule 23.1. *Reply* [#91] at 2–3. Plaintiff appears to request an opportunity to locate an appropriate shareholder to intervene pursuant to Fed. R. Civ. P. 24(b) (permissive intervention). While this request was made in Plaintiff's reply, and is not properly before the Court, *see* D.C. Colo. L. Civ. R. 7.1(C), the Court elects to consider it herein.

As an initial matter, the relief requested is not proper. "[T]he language of Rule 24(b) appears directed towards intervenors who seek to become involved in the main action by its requirement that there be a common question of law or fact between the intervenor's claim . . . and the main action." 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1911, at 467-68 (3d ed. 2007). Rule 24 is not directed toward the parties to the litigation, but rather is directed toward third parties who were, for one reason or another, left out of the litigation. *See* 7C *id.* § 1901, at 257 ("Intervention [is] a procedure by which an outsider with an interest in a lawsuit may come in as a party though the outsider has not been named as a party by the existing litigants . . . ."). The more suitable relief for Plaintiff is substitution of a party pursuant to Rule 15. *See* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1474, at 549-52 (2d ed. 1990) ("[A] party may make a Rule 15(a) amendment to . . . substitute . . . parties to the action.").

Courts have allowed plaintiffs without standing to substitute a plaintiff with standing when the court deemed it prudent to do so. *See, e.g.*, *Health Research Group v. Kennedy*, 82 F.R.D. 21, 30–31 (D.D.C 1979). However, the viability of Plaintiff's position is complicated by the fact that in the First Consolidated Complaint, he initially pled that he "is,

and at all relevant times was, a shareholder of Delta." *Complaint* [#32] ¶ 17. This was apparently false, as in Plaintiff's proposed First Amended Complaint, Plaintiff acknowledges that he has only been a shareholder since January 26, 2004. *First Amended Complaint* [#78-2]¶ 11.

This factor makes a decision to allow Plaintiff to substitute a new party, one who would have standing under Rule 23.1, unusually complex. Although Rule 15 provides that "[t]he court should freely give leave" to amend, this is modified by the statement "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant . . . ." *Foman*, 371 U.S. at 182. Moreover, applicable case law suggests that amendment may be denied in circumstances like those present here. "Where the party seeking amendment knows or should have known the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (citation omitted).

Plaintiff relies upon *Conrad* for the proposition that the standing rules applicable to derivative actions should not be construed so as to "prevent reasonable opportunities to rectify corporate aberrations." *Conrad*, 940 A.2d at 41. In *Conrad*, much like this case, the Plaintiff alleged a series of backdated stock option grants. The court treated each grant as a separate transaction and expressed concern that the plaintiff lacked standing to pursue claims based upon transactions that occurred prior to her acquisition of stock. *Id*. at 42. The court therefore conditioned dismissal of the pre-acquisition claims on the possibility of substituting another shareholder in Conrad's place. *Id*.

19

The *Conrad* court's reasoning is persuasive here. While Plaintiff's carelessness in drafting the consolidated complaint is not condoned, there is no indication that Plaintiff intentionally sought to mislead the court or Defendants. Further, while untimeliness alone may be sufficient to deny a motion to amend, especially when the facts were known, or should have been known, when the original complaint was filed, *Las Vegas Ice*, 893 F.2d at 1185, the Court finds that justice would not be served by such a result. In conjunction with my Recommendation, I also recommend that denial in part of the Motion on the basis of standing be stayed while Plaintiff is given leave to file a motion to substitute a plaintiff who cures his lack of standing.

### 2.     Expiration of Statutes of Limitation and Repose

Although there is reason to deny Plaintiff the opportunity to substitute a new plaintiff who could fulfill Rule 23.1's standing requirement, because of the possibility that Plaintiff *may* be able to substitute a new plaintiff, it is important to consider what events would, regardless of the plaintiff involved, be barred by the statute of limitations or statute of repose. The analysis differs for Plaintiff's state law claims versus his federal law claim pursuant to § 14(a) and Rule 14a-9. Additionally, because expiration of the statute of limitations is generally an affirmative defense, it is only proper to deny Plaintiff leave to amend if the facts alleged in the proposed amended complaint clearly demonstrate that the applicable statutory period has run. *See, e.g.*, *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980). Therefore, the issue is whether the allegations or events presented in Plaintiff's proposed First Amended Complaint are timely.

### i.     Federal Law Claim

Defendants assert, and Plaintiff does not dispute, that his claim pursuant to § 14(a) and Rule 14a-9 is subject to a one-year statute of limitations and a three-year statute of repose. *See Response* [#82] at 10; *see Exxon Mobile*, 500 F.3d at 198-99. In securities law cases, the statute of limitations begins to run when the plaintiff is put on "inquiry notice"–that is, when a reasonable investor should have been on notice of a potential violation of the securities laws. *See Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1196 (10th Cir. 1998). A determination of inquiry notice is not feasible on a motion to amend because it is would be highly fact-sensitive; however, the statute of repose poses no such factual difficulties.

As a preliminary matter, the Supreme Court has rejected the idea of equitable tolling principles as applied to statutes of repose. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) ("Because the purpose of the [three]-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period."). Further, no inquiry into the state of mind of the parties is necessary to determine whether the three-year statute of repose bars some of Plaintiff's claims. Therefore, because the events that are barred by the statute of repose are easily ascertainable, it would be clearly futile to permit Plaintiff to amend his Complaint to reassert those claims.

As noted above, with respect to Plaintiff's § 14(a) and Rule 14a-9 claim, the appropriate dates for purposes of the statute of repose are the dates on which Defendants' issued the proxy statements. "A statute of repose bars 'any suit that is brought after a specified time since the defendant acted . . . , *even if this period ends before the plaintiff has suffered a resulting injury.*" *Exxon Mobile*, 500 F.3d at 199 (citation omitted). Here,

the original complaint was filed on September 11, 2006 [Docket No. 1].[2] Thus, any proxy statements issued prior to September 11, 2003 are clearly barred by the three-year statute of repose. This is so notwithstanding Plaintiff's citation of various cases he claims stand for the proposition that when there is a series of misrepresentations, the period of repose begins when the last representation is made. *See Reply* [#91] at 10–11.

More specifically, the cases cited by Plaintiff are not apposite. As with the continuing wrong exception to the contemporaneous ownership requirement, courts are skeptical of allowing revival of time-barred claims in securities law cases. *See, e.g.*, *In re Ditech Networks, Inc. Derivative Litig.*, No. C 06-5157 JF, 2007 WL 2070300, at *8 (N.D. Cal. July 26, 2007) (unpublished decision) ("[T]he Court is highly skeptical of a continuing wrong theory that would allow the revival of a time-barred claim under Section 10(b) upon the issuance of a further financial statement that failed to correct the prior false statement. Such a theory appears to approximate the effects of the fraudulent concealment doctrine of equitable tolling, a doctrine that does not apply in the Section 10(b) context.")). Not only has the Supreme Court specifically rejected equitable tolling principles for a statute of repose, *see Lampf*, 501 U.S. at 363, but Delaware courts addressing statute of limitations issues are also highly suspect of a "continuing wrong theory." *See, e.g.*, *Ewing v. Beck*, 520 A.2d 653, 664 (Del. 1987) (noting that in situations in which a continuing wrong can be segmented, the applicable statute of limitations will apply to each alleged wrong and not the course of conduct as a whole); *see also Desimone*, 924 A.2d at 925 ("[I]n the . . .

---

[2] Plaintiff's proposed amendment would relate back to the original date of filing, even if another plaintiff is substituted who would satisfy the standing requirements. Fed. R. Civ. P. 15(c)(1)(B).

context of applying the doctrine to determine when a statute of limitations will begin to run, our Supreme Court has made it clear the concept of a continuing *wrong* applies only when 'the alleged wrongful acts are . . . so inexorably intertwined that there is . . . *one continuing wrong.*'" (citation omitted)).

Here, the allegedly false proxy statements are all discrete and separable actions, as are the alleged instances of backdating. This is not a situation in which the alleged actions by defendants are so "inexorably intertwined that there is [] one continuing wrong." *See id.* Therefore, the only proxy statements that survive the three-year statute of repose are those issued after September 11, 2003. Assuming the District Court agrees that Plaintiff should be given leave to amend his complaint, only three proxies, issued on October 24, 2004, November 22, 2004, and December 30, 2005, may be challenged via a § 14(a) claim in this case.

### ii.     State Law Claims

Delaware applies a three-year statute of limitations in derivative actions. *See* Del. Code Ann. tit. 10, § 8106(a) ("[N]o action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . ."); *Kahn v. Seaboard Corp.*, 625 A.2d 269, 271 (Del. Ch. 1993) (applying § 8106 in a derivative action). The Delaware courts hold that the cause of action accrues at the time the wrongful act occurred, and that ignorance of the cause of action, absent concealment or fraud, does not prevent the cause of action from accruing. *See, e.g.*, *Isaacson, Stolper & Co. v. Artisans' Savings Bank*, 330 A.2d 130, 132 (Del. 1974).

As noted above, the relevant conduct at issue for purposes of the state law claims

is the alleged backdating of stock options rather than the date the proxy statements were issued.  *See Desimone*, 924 A.2d at 913.  Plaintiff alleges that Defendants deliberately concealed their breaches of fiduciary duty through the issuance of false proxy statements.  *First Amended Complaint* [#78-2] ¶¶ 138-43.  At this stage in the proceedings, because Plaintiff's allegations must be accepted as true, *see Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), and leave to amend should be freely given, Fed. R. Civ. P. 15(a)(2), Defendants cannot avail themselves of a statute of limitations defense with regard to Plaintiff's state law claims (assuming he can substitute a plaintiff with standing).  Therefore, insofar as Plaintiff seeks to amend his complaint with respect to his state law claims, the Court recommends that denial of these claims due to the named Plaintiff's lack of standing be stayed while Plaintiff has leave to substitute a new plaintiff who has standing to assert injuries regarding every alleged backdating event.  Assuming Plaintiff successfully substitutes a new plaintiff, as pled, none of his state law claims would be time-barred.

### 3.    Demand Futility

The final hurdle in Plaintiff's quest to amend his complaint, assuming he can cure his lack of standing, is whether Plaintiff's proposed First Amended Complaint would be subject to dismissal for failure to make pre-suit demand on the Company's board of directors.  The issue is complicated here by the fact that different claims seem to implicate directorial liability in different ways and the composition of the Board has changed over time.  However, because of the procedural posture of the case presently, Plaintiff's proposed First Amended Complaint will be liberally construed.

A shareholder wishing to sue derivatively on behalf of the corporation must plead with particularity why pre-suit demand should be excused.  Fed. R. Civ. P. 23.1(b)(3)(A) &

(B) ("The complaint must be verified and must:  . . . (3) state with particularity:  (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.").  State law determines the contours of this demand requirement, and because the Company is incorporated in Delaware, Delaware law controls.  *See, e.g.*, *Kamen*, 500 U.S. at 98-99 (finding that corporations "are creatures of state law"); *Penn Mont Sec. v. Frucher*, 502 F. Supp. 2d 443, 459 (E.D. Pa. 2007) ("State law establishes the demand requirement and the standards 'to determine whether facts demonstrate [a] demand would have been futile and can be excused.'" (citation omitted)).

Delaware has two separate lines of cases which address whether demand would be futile.  In the first line of cases, the Delaware Supreme Court held that "demand can only be excused where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule."  *Aronson v. Lewis*,  473 A.2d 805, 808 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  In the second line of cases, the Delaware Supreme Court noted that "[w]hat . . . is relevant is not whether the board that approved the challenged transaction was or was not interested in that transaction, but whether the present board is or is not disabled from exercising its right and duty to control corporate litigation."  *Rales v. Blasband*, 634 A.2d 927, 934 n.8 (Del. 1993)*.*

Here, Plaintiff alleges that options were granted as late as December 8, 2003.  *First Amended Complaint* [#78-2] ¶ 33.  He further alleges that proxy statements were issued as late as December 30, 2005.  *Id.* ¶ 128.  Finally, a review of the proposed First Amended Complaint reveals that each director named in the complaint was serving on the Board

when at least one allegedly false proxy statement was issued. *Id.* ¶¶ 13–25. As noted previously, liability under § 14(a) and Rule 14a-9 does not include a scienter requirement. Thus, negligence is the proper standard of liability. *See, e.g.*, *Gould v. Am.-Hawaiian Steamship Co.*, 535 F.2d 761, 777 (3d. Cir. 1976); *see also Katz v. Pels*, 774 F. Supp. 121, 126 (S.D.N.Y. 1991) ("In order to establish liability under the proxy laws, it is sufficient to show that the corporate officers and directors who authorized the proxy statement negligently failed to adhere to the rules requiring full disclosure."). Negligence can be pled merely by alleging that the directors failed to refute misleading information in proxy statements. *See, e.g.*, *Berman v. Thomson*, 403 F. Supp. 695, 699 (D.C. Ill. 1975) ("As a matter of policy, an outside director should be held liable for his failure to refute any misleading statement in a document as vital as a proxy statement.").

Directors Larson and Parker face liability for benefitting from the alleged backdating of options; directors Eckelberger Enright, and J.B. Wallace face liability for granting the allegedly backdated options. *See Ryan*, 918 A.2d at 356 ("Plaintiff alleges that three members of a board *approved* backdated options, and another board member accepted them. These are sufficient allegations to raise a reason to doubt the disinterestedness of the current board and to suggest that they are incapable of impartially considering demand."). Additionally, as noted, directors who approved of or issued allegedly false proxy statements could face liability under § 14(a) and Rule 14a-9 (i.e., directors Lewis, Smith, Stanley, Collins, Van Blarcom and Keller). *See Berman*, 403 F. Supp. at 699.

The *Rales* standard considers whether the Board is disabled from "exercising its right and duty to control corporate litigation." *Rales*, 634 A.2d at 934. Plaintiff has sufficiently alleged that the acting directors are unable to impartially consider demand on

26

the Board because of the likelihood of personal liability. *See* Ryan, 918 A.2d at 355 ("Directors who are sued have a disabling interest for pre-suit demand purposes when 'the potential for liability is not a mere threat but instead may rise to a substantial likelihood.'" (citation omitted)). Therefore, demand futility, at least at this stage, does not appear to bar Plaintiff's claims.

### III. Conclusion

The Court finds that Plaintiff's proposed First Amended Complaint sufficiently pleads facts to state a claim pursuant to § 14(a). In addition, because of the liberal amendment standards provided by Fed. R. Civ. P. 15, Defendants' demand futility argument should not result in denial of Plaintiff's Motion regarding any of his claims. Further, Defendants' statute of limitations defense should not result in denial of Plaintiff's Motion regarding his state law claims. However, as noted above, all of Plaintiff's state law claims and a portion of Plaintiff's federal law claim would be subject to dismissal for lack of standing and due to the relevant statute of repose.

For the reasons stated above, I respectfully **RECOMMEND** that Plaintiff's Motion be **GRANTED in part and DENIED in part**.

The Court summarizes its Recommendation as follows:

(1) Regardless of Plaintiff, the portion of the §14(a) claim that involves proxy statements issued before September 11, 2003 is time barred. To the extent that Plaintiff asserts a § 14(a) claim involving earlier events, the Motion should be **denied**;

(2) Current Plaintiff only has standing to assert a §14(a) claim for proxy statements issued after January 26, 2004. To the extent that current Plaintiff's federal law claim

asserts an injury related to proxy statements issued before this date, the Motion should be **denied**;

(3) Current Plaintiff does not have standing to assert any state law claims or the proposed federal law claim regarding proxy statements issued before he became a shareholder. To the extent that current Plaintiff asserts a § 14(a) claim for earlier events and to the extent that Plaintiff asserts any state law claims, the Motion should be **denied**; and

(4) In all respects other than those set forth in paragraphs (1)-(3) above, the Motion should be **granted**.

It is further **RECOMMENDED** that denial of Plaintiff's state law claims and portions of his federal law claim (that are not barred by the statute of repose) should be stayed for a period of thirty (30) days from the date of the District Court's order, if any, adopting this Recommendation so that Plaintiff may file a Motion to Substitute which cures his lack of standing regarding those claims.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this

Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  September 5, 2008

<div style="margin-left:50%">

BY THE COURT:

 s/ Kristen L. Mix            
United States Magistrate Judge
Kristen L. Mix

</div>